Texas & New Orleans Railway Company v. Carrie Fields.

Decided May 8, 1903.

**Contributory Negligence—Railway Brakeman—Violation of Orders.**

A railway brakeman working with a construction train was ordered by the conductor to remain at a point around a curve for the purpose of flagging approaching trains, but did not do so, and forty minutes later, when the train started to back, was run over and killed, none of the train operatives knowing of his presence there. Held, that he was guilty of contributory negligence precluding a recovery for his death, even though the whistle was not blown nor the bell rung at the time the train started to back.

Appeal from the District Court of Nacogdoches. Tried below before Hon. Tom C. Davis.

*Baker, Botts, Baker & Lovett* and *Watts, Chester & Ellison,* for appellant.

*Blount & Garrison* and *O. S. Parker,* for appellee.

PLEASANTS, Associate Justice.—Appellee brought this suit to recover damages for the death of her son, Peter Fields, whose death is alleged to have been caused by the negligence of the appellant. At the time of his death Peter Fields was in the employment of appellant as a brakeman upon one of its work trains, and was run over and killed by the train upon which he was employed, under the following circumstances: The train was engaged in hauling dirt from Ryon's cut, in Nacogdoches County, to the Angelina River, and a short time before the accident had come up to the cut from the river with a string of empty cars and stopped on the main line of defendant's railroad at said cut. The train consisted of an engine and caboose and fifteen flat cars. The caboose was attached to the rear of the engine, which was facing south towards the river, and the flat cars were in front of the engine. The crew consisted of a conductor, engineer and fireman, the deceased, Peter Fields, being the head brakeman. In coming from the river the engine had backed, pulling the empty cars which were attached to its front end. The conductor had ordered the deceased to remain at Poe, a station on the road between the cut and the river, for the purpose of flagging trains that might be coming towards the cut from the south. After standing at the cut for some time the train started back to the river and had gone but a short distance when it was discovered that the deceased had been run over and killed. No one saw the accident, and it is not shown what deceased was doing or where he was at the time he was struck. His mangled remains were seen to roll from under the train to the side of the track a short distance from where the train stood at the cut, and within a few seconds after it started back to the river.

The evidence is conflicting as to whether the whistle was blown and

the bell rung before the train was started, but there is ample evidence to support the finding of the jury that neither of these signals was given. None of the crew of the train knew that the deceased had failed to remain at Poe, as he had been instructed, except the fireman, who testified that he saw deceased on the end of the train when he reached the cut, and did not know that he had been ordered to remain at Poe. There were four or five curves between the cut and Poe, one of which was about 250 yards from where the train stood at the cut. The train had been standing at the cut about forty minutes when it started back to the river. There was another work train standing in the track north of the train by which the deceased was killed, and two of the crew of this train testified that they saw the deceased, about twenty or thirty minutes before he was killed, on the track near the south end of his train. If Peter Fields had not been instructed to remain at Poe to flag approaching trains, it would have been his duty, under the rules of the company, to have gone back around the curve between his train and the river and remained there while his train was standing at the cut, in order to protect it from approaching trains. He was an experienced brakeman and knew the rules of the company. He had been on this train engaged in this work for a week or more previous to his death, and during all of that time on each trip made by the train from the river to the cut, except when the hands from the river were brought in to dinner and returned from work in the evening, had remained at Poe in obedience to instructions until the train returned there from the cut. This accident occurred between 11 and 12 o'clock in the day, and the hands at the river were not brought in to dinner when the train came to the cut before the accident. The train was returning to the river to bring the hands to dinner when the accident occurred.

The trial of the cause in the court below resulted in a verdict and judgment in favor of appellee for the sum of $1500.

The appellant pleaded in defense of appellee's cause of action contributory negligence on the part of Peter Fields in not being at his post of duty around said curve to flag approaching trains and protect his train from collision.

The first assignment of error is as follows: "The court erred in overruling defendant's motion for new trial, and especially the ninth paragraph thereof, because the verdict of the jury is not supported by, but is against the evidence, in this: The undisputed evidence shows that it was the duty of the said Peter Fields to have been, at the time of the accident, down the track towards the Angelina river, to flag approaching trains, and his failure to discharge this duty, and his presence with the train at the time of the accident was not known to the conductor and engineer, and they had no reason to expect him to be elsewhere than down toward the river, where his duty required him to be; and for that the undisputed evidence shows that had he remained where directed by the conductor, he would not have been injured, regardless

of whether the defendant was or was not guilty of negligence in moving the train at that time; and for that the evidence shows that Peter Fields' negligence and violation of duty in the respect above named was the direct and proximate cause of his death."

This assignment must be sustained. The undisputed evidence shows that Peter Fields was wrongfully upon appellant's track or train at the time and place of the accident, and that the operatives of the train did not know he was upon or near said train. Such being the facts, it matters not how negligent appellant's employes may have been in the operation of the train, the accident could not have occurred but for the wrong and negligence of Peter Fields in violating his duty and the rules of the company in being upon the train or track at the time and place of the accident, and appellant is therefore not liable for the injury to appellee resulting from the death of said Peter Fields. No one saw the deceased at the time he was killed, and his exact position at the time he was struck by the train is not shown further than that he was at a place at which he had no right to be. His known duty and the positive instructions of his superior required him to be around the curve from the train where he would have been in no danger from the failure of the operatives of the train to give the proper signals before putting the train in motion. When he failed to comply with this duty and voluntarily and without knowledge of the operatives of the train placed himself in a position of danger, he became a wrongdoer, and the operatives of the train owed him no duty further than to use every reasonable means to prevent his injury after his peril became known to them, and as the undisputed evidence shows his presence at or near the train was not known to said operatives, this duty did not arise. Railway Co. v. Smith, 52 Texas, 185.

Because the undisputed evidence in the case shows that the wrongful act of Peter Fields in violating his known duty directly and proximately contributed to his death, appellant is not liable therefor, and the judgment of the court below will be reversed and the judgment here rendered in favor of appellant.

*Reversed and rendered.*

Writ of error refused.