Oscar E. **REED** and Doris E. **Reed**, Appellants,

v.

**WHITE, WELD & COMPANY, INC.,** Appellee.

No. 8592.

Court of Civil Appeals of Texas, Texarkana.

Sept. 12, 1978.

Oscar E. Reed, pro se.

John Andrew Martin, Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, for appellee.

CORNELIUS, Chief Justice.

Oscar Reed and Doris Reed brought suit against Charles Townsend, Jr., White, Weld & Company, Inc. and others for damages. They alleged that White, Weld & Company, on the order of Townsend, wrongfully sold certain securities. The district court rendered interlocutory summary judgment in favor of White, Weld & Company and all other defendants except Townsend. The claim against Townsend proceeded to trial, and the jury, having been charged by the court that Townsend did not have authority to order the sale of the securities, found that he acted maliciously in doing so, but also found that the Reeds suffered no damage. In this appeal the Reeds complain only of the denial of their claim against White, Weld & Company. It is urged that they were entitled to a trial of that claim because material issues of fact existed as to whether White, Weld & Company was negligent in selling the securities on the instructions of Townsend.

The Reeds, along with several other persons, were named as devisees and legatees in the will of Albert L. Reed. Upon Albert Reed's death, Charles N. Townsend, Jr., Charles B. Reed and the appellant, Oscar Reed, were appointed joint independent executors as provided by the will. The assets of the estate included several stocks and bonds of the Missouri-Pacific Railroad Company, St. Louis & San Francisco Railroad Company and Sante Fe Industries. The will provided that securities could not be sold except upon the consent of all three of the joint independent executors. Sometime after probate of the will, the three executors decided that it was necessary to sell some of the stocks and bonds to pay taxes, attorneys fees and other expenses, and they engaged White, Weld & Company to act as broker in the sale. In addition, and apparently as a partial partition and distribution of the assets, the executors instructed White, Weld & Company to transfer title to the securities in question to Oscar and Doris Reed. To effect the transfer to the Reeds, it was necessary that White, Weld & Company be furnished with a tax waiver, an affidavit of domicile, a power of attorney and letters testamentary. Before these were supplied, however, Townsend changed the instructions, and without the joinder of the other executors, ordered White, Weld & Company to proceed with the sale of the securities, including those involved here which had been set aside to the Reeds and which Townsend had previously instructed be transferred to them. White, Weld & Company sold the securities on July 2, 1975. The proceeds were deposited to the account

of the Albert L. Reed Estate and apparently distributed to the beneficiaries.

The Reeds make no claim for the value of the stock, but seek to recover only the amount of interest which the securities would have earned them during their life expectancy had they not been sold, which is represented to be the sum of $24,000.00. In their brief, the Reeds make the following statement:

"The action is limited to the income for the reason that the market value of the stocks and bonds sold by the Defendant, and the cash obtained from the sale thereof was paid to Charles N. Townsend, Jr., . . . and distributed to the beneficiaries of Albert L. Reed under the terms of his will."

The Reeds were entitled to a trial of their claim unless the pleadings, summary judgment affidavits and the answers to interrogatories on file demonstrated conclusively that one or more of the essential elements of their cause of action was lacking, and that consequently White, Weld & Company was entitled to judgment as a matter of law. Tex.R.Civ.P. 166–A; 4 McDonald's, Texas Civil Practice, Sec. 17.26.2, p. 133.

White, Weld & Company contends that the cause of action was precluded for several reasons, but we find it unnecessary to discuss all of the contentions because the record reveals that, even though the sale of the securities was wrongful, the Reeds have been paid all damages legally recoverable by the cause of action they pleaded.

The measure of damages for the conversion of personal property, where the property is shown to have a market value, is the market value at the time of the conversion, plus interest from said date and, in some cases, special damages resulting from the withholding of the property or properly incurred by the owner in the pursuit of it. *American Surety Co. v. Hill County*, 254 S.W. 241 (Tex.Civ.App. Dallas 1923), affirmed, 267 S.W. 265 (Tex.Com. App.1924, judgmt. adopted); *Lincoln v. Packard*, 25 Tex.Civ.App. 22, 60 S.W. 682 (1900, no writ); 14 Tex.Jur.2d, Conversion, Sec. 24, pp. 27, 28; C. McCormick, Law of Damages, Sec. 123, at 463, 464 (1935). The injured party is thus fully compensated, because he can go into the market and make himself whole by purchasing property of like character as that of which he has been wrongfully deprived. *Lincoln v. Packard*, supra; *Griffith v. Burden*, 35 Iowa 138. With specific reference to the wrongful sale of stocks or bonds, and because of their fluctuating value, the prevailing view modifies the rule somewhat, and holds that the true and just measure of damages is the highest intermediate value of the stock between the time of its conversion and a reasonable time after the owner has received notice of the conversion to enable him to replace the stock. *Galigher v. Jones*, 129 U.S. 193, 9 S.Ct. 335, 32 L.Ed. 658 (1889); *In re Salmon Weed & Co.*, 53 F.2d 335 (2d Cir. 1931); 79 A.L.R. 379 (1932); *Gervis v. Kay*, 294 Pa. 518, 144 A. 529 (1929); 63 A.L.R. 297 (1929); Annot., 31 A.L.R.3d 1286 (1970); 63 A.L.R. 305 (1929). And if the conversion is willful, fraudulent or attended with gross negligence, the owner may recover the highest value between the date of conversion and the filing of suit. *De Shazo v. Wool Growers Central Storage Co.*, 139 Tex. 143, 162 S.W.2d 401 (1942); *Ligon v. E. F. Hutton & Company*, 428 S.W.2d 434 (Tex.Civ.App. Dallas 1968, writ ref'd n. r. e.); *Patterson v. Wizowaty*, 505 S.W.2d 425 (Tex.Civ.App. Houston-14th Dist. 1974, no writ).

In this case, it is undisputed that the securities had a market value, but the Reeds have not sought to recover that value. Indeed, they concede that such value has been paid. There is no pleading for special damages of any kind, but only for interest which, it is said, the Reeds could have earned if they still held the securities.

In the absence of special circumstances which might dictate otherwise, the owner of a converted security is not entitled to recover either its face value or the interest or dividends which might have been earned upon holding it to maturity. *Memphis v. Brown*, 20 Wall. 289, 87 U.S. 264, 22 L.Ed. 264 (1874). If the owner desires to

**398**

receive earnings or recover the full matured value, he has the obligation to replace the lost security and hold the wrongdoer responsible for any proper loss in making the replacement. *Memphis v. Brown*, supra; *Gervis v. Kay*, supra; *Baker v. Drake*, 53 N.Y. 211 (1873).

It follows that the Reeds' cause of action was lacking in the essential element of damage. Under the circumstances, the district court properly rendered summary judgment denying them a recovery.

The judgment of the trial court is affirmed.