## SCRUGGS v. E. L. WOODLEY LUMBER CO. (No. 828.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 30, 1915.)

1. APPEAL AND ERROR ⬅⬅194—GROUNDS OF REVIEW—EXCEPTION.

The fact that a special exception in plaintiff's supplemental petition was not in due order of pleading was no cause for reversal, where no exception to the supplemental petition was taken in the court below, on the ground that it was not in due order of pleading.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1241–1246; Dec. Dig. ⬅⬅194.]

2. PAYMENT ⬅⬅9 — INCUMBERED PROPERTY— LEGAL TENDER.

A creditor is not required to accept incumbered property in settlement of his account and to assume the incumbrance, but need accept nothing but a legal tender.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 38, 40, 41, 49, 53; Dec. Dig. ⬅⬅9.]

3. EVIDENCE ⬅⬅354—BOOKS OF ACCOUNT— FIRST PERMANENT ENTRY—ORIGINAL ENTRY.

In an action for the balance due on a bill of lumber furnished to build a residence on land, the plaintiff's daybook or journal, kept as a book of account in the regular course of business, and the first book in which the items of sale entered by plaintiff's yardmen on slips torn from a pad were first permanently entered, after the preliminary proof, was admissible as a book of original entry.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1432–1483; Dec. Dig. ⬅⬅354.]

4. EVIDENCE ⬅⬅354—BOOKS OF ACCOUNT— COLLATERAL FACTS.

Under the rule as to the admission of books of original entry containing items of account, books not containing charges made in the regular course of business are inadmissible to prove the collateral matters shown therein, which matters must be shown by independent testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1432–1483; Dec. Dig. ⬅⬅354.]

5. EVIDENCE ⬅⬅354—BOOKS OF ACCOUNT— ALTERATION.

In an action for the balance due on a bill of lumber furnished to build a residence upon land, legal title to which was in defendant, who had contracted to convey it to one S. on payment of a certain sum, an account book, showing charges against J. F. or J. F. S., was not inadmissible because plaintiff's manager wrote after S.'s name the word "residence," where it appeared that S. was procuring material about the same time, and where there was no indication of fraudulent intent.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1432–1483; Dec. Dig. ⬅⬅354.]

6. SALES ⬅⬅53—ACTION FOR PRICE — QUESTION FOR JURY.

In an action for the balance due on a bill of lumber furnished to build a residence upon land, the legal title to which was in defendant, but which he had contracted to convey to one S. on payment of a certain amount, evidence *held* to make defendant's agreement to pay therefor a question for the jury.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 145–151; Dec. Dig. ⬅⬅53.]

7. TRIAL ⬅⬅251—INSTRUCTIONS—PLEADING.

In such action, where the plaintiff did not plead any estoppel or waiver as against the defendant, an instruction that if defendant waived the size of the house, or knew the size of the house actually built, plaintiff could recover, and that defendant would be estopped to claim that the lumber was furnished for a house of that size for which there had been no agreement, should not have been given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. ⬅⬅251.]

Appeal from Wheeler County Court; M. M. Miller, Judge.

Action by the E. L. Woodley Lumber Company against W. C. Scruggs. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

H. B. Hill, of Shamrock, and C. E. Gustavus and M. J. R. Jackson, both of Amarillo, for appellant. M. Reynolds and C. E. McVey, both of Shamrock, for appellee.

HUFF, C. J. This was a suit to recover the balance due appellee for the sum of $391.43, on a bill of lumber furnished to build a residence upon land, the legal title to which was in appellant, but who had contracted with one Smith to deed the land to him upon the payment of certain sums of money. It is alleged, in effect, that appellant made the order for the lumber and, upon a sufficient consideration, agreed to pay the bill upon the contract so entered into with appellant. Appellee delivered the lumber to Smith, who erected the house upon the land, to which appellant had the legal title. There was a verdict and judgment in favor of appellee for the amount sued for.

The first assignment will be overruled. The facts are sufficient to raise the question of an agreement; that is, that the minds of the parties met.

[1, 2] The second assignment will be overruled. The fact that special exception No. 6 in appellee's supplemental petition was not in due order of pleading is no cause for reversal on the ground that the court sustained the exception to paragraph 6 of appellant's answer. This was a formal matter, and an exception should have been presented in the court below to the exception contained in the supplemental petition on the ground that it was not in due order of pleading. The exception will not be entertained in this court, where it is made for the first time. We think the court properly sustained the exception. We know of no rule of law or equity that will require a creditor to accept in settlement of his account property incumbered by indebtedness and to assume such indebtedness. The appellee was not required in law to accept anything but a legal tender.

[3] Under the third assignment it is urged

---

that the shopbooks of appellee should not have been admitted in evidence. The bill taken by appellant urges that this book was not the book of original entry. It appears to have been the daybook or journal. The testimony to which appellant refers as showing the book not to be one of original entry is to the effect that appellee was a lumber company and dealer in lumber. In making sales the yardmen noted on a tablet or pad the sales made, to whom made, and the articles sold. This pad or slip was turned in to the bookkeeper, who entered the items from this slip of paper which had been torn out of a pad by the yardman making the sale or delivering the article. Both the manager and bookkeeper testified as to the method, and the bookkeeper who made the entries testified as to the correctness of the books, and that he made the entries in the daybook or journal. This book is shown by the testimony to be the first book of permanent entry. The objection here urged is that:

"The tickets were the matters of original entry and were the basis of the charges in such book, and that the tickets were the first and original entry."

It will be observed that there was no exception that the book kept, and the entries made were not entered in due course of business, and not correctly kept or proven up by the proper parties making them; the only objection being that the book was not the book of original entry. We shall, for the purpose of this opinion, presume all the necessary preliminary proof was made, and consider the sole question as to whether this was the book of original entry within the meaning of the rule. In Railway Co. v. Johnson, 7 S. W. 838, the Supreme Court, speaking through Judge Gaines, said:

"It seems, however, pretty well established that the first permanent records of the transactions by the creditor are to be deemed original entries, if made within a short time after the transactions themselves, although the items may have been previously entered, as a temporary assistance to the memory, upon some slate, book, paper, or other substance not intended to be preserved. In an old case this court admitted the rule generally recognized in the courts of this country, but strongly animadverted upon it as a dangerous innovation of the principles of the common law, and refused to extend it, in cases of merchant's account, beyond such articles as are usually sold by a merchant in course of his business. Cole v. Dial, 8 Tex. 347. It is usually confined to accounts for labor performed, or to goods sold by regular dealers in merchandise."

In the case then under consideration, the court refused to extend the rule to transactions between shippers of grain and the railroad. The appellant cites the case of Cathey v. Railway Co., 104 Tex. 39, 133 S. W. 417, 33 L. R. A. (N. S.) 103. In that case the register of the railway company showed the time trains pass the yards. This register was made up from slips or cards prepared and furnished the keeper of the register by the employés operating the trains. It was held these slips or cards were original evidence.

In the case cited Judge Ramsey, who rendered the opinion of the court, cited the Johnson Case, evidencing thereby the shop rule would not be extended to registers of railroads as to the movement of its trains. In the case of Guthrie v. Mann, 35 S. W. 710, cited by appellant, the court simply held the books were not competent to prove a receipt, but the receipt itself should be proven. Pohl v. Bradford, 25 S. W. 984, held, as it is universally held, under the shopbook rule, that the ledger is not admissible where it is shown to have been made up from the daybook or journal. In Baldridge v. Penland, 68 Tex. 441, 4 S. W. 565, it is held the books of original entry should be produced or accounted for, and that items on the account which do not appear to be such as were usually dealt in by the business could not be proven by the books.

[4] Books are not admissible under this rule, unless they are used in the regular course of business and kept by the parties as books of account. Hence books for some purpose other than that of making charges in the course of business do not fall under the rule or items entered in account books which are not such as are handled in the regular course of the business, and therefore cannot be proved by the books. It is the general holding, under this rule, that collateral facts cannot be shown by the books. If other facts, aside from the sale and delivery of the articles or the performance of the work and labor are necessary to make out the case, these facts cannot be established by the books or affidavit of the party, but must be made out by independent testimony. The cases cited by appellant evidently had in view these general principles in deciding the cases then in hand. Mr. Jones on Evidence, vol. 3, § 569, discusses the question now involved, as follows:

"In addition to the requirement that the entries in the book of account be made in the regular course of business, it is equally essential that they constitute the party's original entries or the first permanent records of the transaction in question, in order to be admissible in evidence. Thus, if the entries are made in a daybook or journal and transferred thence to a ledger, the entries in the ledger are not competent, but it is no objection to the book, if otherwise regular, that the entries which they contain were first made temporarily. * * * The former strict idea of what constituted original entries has been modified to fit the necessities of new business conditions. Inasmuch as under the modern methods of extensive business houses the information relative to the transactions constituting the accounts must pass through various hands before being permanently recorded, some system of temporary memoranda preparatory to the permanent records is necessary to insure convenience as well as accuracy. It would be impracticable to preserve, for any length of time, the tags, slips, or tokens constituting such original memoranda, and impossible, in view of the changing of employés, to obtain the testimony of the persons who made the temporary memoranda or conducted the transaction. Hence, following the rule of necessity, the courts do not regard such temporary memoranda as the originals, but look to

the permanent records as such original entries when properly verified by a suppletory oath."

See, also, Elliott on Evidence, vol. 1, §§ 459, 460; Rogers v. O'Barr et al., 81 S. W. 750; Barclay v. Deyerle, 53 Tex. Civ. App. 236, 116 S. W., on page 125. The books in this case clearly fall under the shopbook rule, and we think it is sufficient to show that the daybook or journal is the first permanent book of entry, and that, if the other necessary requirements are shown, is admissible, and that the slips of paper, used as memoranda, are not, under this rule, the original entry, such as will require their production. This assignment will be overruled.

[5] The fourth assignment urges the trial court should have excluded the books because it was shown that they had been altered. The account appears to be in the name of J. F. or J. Frank Smith, Residence. The manager says after the bookkeeper made the entries that he, the manager, wrote after Smith's name, "residence." We find nothing in the fact that the word "residence" was written in the account to indicate a fraudulent appearance. It appears Smith was procuring material about the same time for a church that he was procuring material for the house. We think the explanation was sufficient, and if it satisfied the trial court as to the appearance of the books, we think there would be no error shown requiring a reversal of the case. Jones on Evidence, vol. 3, § 576.

The fifth, seventh, and eighth assignments are overruled for the reasons given under the first assignment.

[6] The evidence presents a conflict as to whether appellant and appellee reached an agreement. If appellee's witnesses are to be believed, appellant agreed to pay and ordered the lumber to build the house. He did so for his own interest and financial benefit, and the inference may be drawn therefrom that he left the size the house should be to the determination of Smith. Appellant owned the land on which the house was being erected, that is, he had the legal title thereto and had contracted with Smith to deed him the property if Smith paid for it, and the testimony indicates Smith had practically defaulted before the lumber was delivered. The circumstances, we think, in this case, are sufficient to raise the issue presented by the trial court for the jury's finding.

[7] We believe the court, however, was in error in giving appellee's specially requested charge No. 3, which substantially instructed the jury that if appellant waived the size of the house, or, knowing it, that is, the size of the house actually built, that appellee could recover, or that appellant would be estopped to claim the lumber was furnished for a house of that size, for which there had been no agreement. There was no estoppel or waiver pleaded by appellee. Under the pleadings this charge should not have been

given. We doubt the sufficiency of the testimony to sustain the question of waiver or estoppel; however, we will not, at this time, hold the court was in error because of the insufficiency of the testimony. It occurs to us the only issue in the case was whether there was entered into the agreement alleged. If there was, appellant was liable; if not, he was not. Under the conflict and the peculiar state of facts in this case, this charge was calculated to divert the attention of the jury from the issue presented by the pleadings. Assignment No. 6 will be sustained, which will require a reversal of this case.

Reversed and remanded.