## J. N. PHARR & SONS, Limited, v. C. D. KENNY CO.

(Circuit Court of Appeals, Fifth Circuit.　March 19, 1921.)

No. 3630.

1. **Sales ⬳411—Petition held to allege sufficiently a putting of the seller in default.**

   In a buyer's action for the seller's breach of a contract for the sale of sugar to be delivered in November, 1919, a petition alleging that the seller breached the contract, and refused, notwithstanding repeated demands, to fulfill the contract by shipping the sugar, and that the buyer timely and seasonably made demand during November, 1919, and again during December, on the seller, for the fulfillment of its part of the contract, but without avail, sufficiently alleged a putting in default.

2. **Sales ⬳182(1)—Whether weather conditions and greenness of sugar cane were causes of seller's refusal to deliver sugar held for the jury.**

   Though weather conditions delayed the manufacture of sugar by a seller, yet, where it manufactured enough sugar to fill all of its contracts, it was a question for the jury whether the greenness of the cane and the weather conditions were the cause of its refusal to deliver sugar under a contract of sale contingent on causes beyond the seller's control, in view of an advance in price.

3. **Sales ⬳68—Contract of sale contingent on causes beyond seller's control held to include sugar manufactured from purchased cane.**

   Under contracts for the sale of sugar by a grower of sugar cane and manufacturer of sugar, contingent on causes beyond its control, though it may not have been compelled to buy cane from other parties in order to fill the contract, where it did so, and it was its uniform custom to do so, the contracts included sugar manufactured from cane so purchased.

4. **Evidence ⬳461(3)—Intention of seller of sugar by written contract to contract only for sugar manufactured from its own cane not proven.**

   Under a written contract for the sale of sugar by a grower of sugar cane and manufacturer of sugar, contingent on causes beyond its control, evidence would not have been admissible of anything said, when the contract was negotiated, as to the manufacturer's intention to contract only for the future delivery of sugar manufactured from cane grown on its own plantations.

5. **Sales ⬳411—Petition in buyer's action held not to limit buyer's rights to sugar manufactured in particular parish.**

   Where contracts for the sale of sugar by a manufacturer did not refer to the place of manufacture, but were contingent on causes beyond the manufacturer's control, an allegation in the petition in the buyer's action for the manufacturer's breach that the manufacturer's place of business and domicile were in a particular parish was not equivalent to an allegation that the contracts applied only to sugar manufactured in that parish, where the contracts were pleaded and made a part of the petition by reference.

6. **Sales ⬳420—Measure of damages for breach of contract of sale properly left to jury, notwithstanding profit fixed by Food Administration.**

   In an action against a seller for breach of a contract for the sale of sugar purchased for resale, though the United States Food Administration had fixed a margin of profit on resales, and the buyer was abiding by

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

such scale of profits, the court properly left the measure of damages to the jury, under instructions that they might consider the profit fixed by the Food Administration, instead of charging that the measure of damages was limited to the profit so fixed.

7. **War ⬤⇒4—Food Administration could not arbitrarily fix future selling price of sugar.**

The United States Food Administration could not, under the act of Congress (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r) creating it, arbitrarily fix a price at which future sales of sugar should be made.

In Error to the District Court of the United States for the New Orleans Division of the Eastern District of Louisiana; Rufus E. Foster, Judge.

Action by the C. D. Kenny Company against J. N. Pharr & Sons, Limited. Judgment for plaintiff, and defendant brings error. Affirmed.

R. E. Milling, of New Orleans, La. (Milling, Godchaux, Saal & Milling, of New Orleans, La., on the brief), for plaintiff in error.

W. J. Waguespack, Herbert W. Waguespack, and J. P. Baldwin, all of New Orleans, La., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. October 3, 1919, the parties to this suit executed the following memorandum contract:

"Bought of J. N. Pharr & Sons, Ltd., Berwick, La., for the C. D. Kenny Co., Baltimore, Md., 1,000 barrels of La. plantation granulated sugar at 12c. net per pound, f. o. b. cars at factory. Shipment as soon as possible during November, 1919. All shipments to be made—S/D attached to B/L payable on arrival of goods at destination.

"This purchase to be invoiced and paid for at contract price. No allowances will be made for declines in market.

"This contract contingent upon strikes, accidents, fire, or other causes beyond seller's control."

October 6, 1919, they entered into another contract similar in all respects, except that it provided for the purchase and sale of 300 barrels of sugar at the price of 11.76 cents per pound.

Defendant in error (herein called plaintiff), alleging that plaintiff in error (herein called defendant) refused to sell and deliver the sugar contracted for, sued to recover damages. Defendant first filed an exception of no right or cause of action, which was overruled, and then pleaded that at the times the contracts were entered into it was known to the parties that the sugar was not in existence, but would have to be manufactured, and that weather conditions became such that the cane did not mature early enough for the sugar to be manufactured as agreed, and thereupon averred that these weather conditions constituted a cause beyond the defendant's control within the meaning of the contracts, and also that before deliveries became due the United States Food Administration fixed the price of sugar at 18 cents per pound.

Defendant owned and operated two sugar factories, and manufactured 3,781 barrels of sugar in November, and 6,236 barrels of sugar

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in December, of 1919. In September it had contracted to sell 2,200 barrels of sugar to parties other than the plaintiff. November 8, 1919, the Food Administration fixed a maximum price of 18 cents per pound for sugar for the season of 1919. November 14, 1919, defendant notified the plaintiff that it desired to be relieved of its obligation to furnish sugar, and also stated that, on account of the greenness of the cane and excessive moisture, defendant had been unable to start its factory, and asserted that it was excused from doing so by reason of the action of the Food Administration, and during the same day offered to sell to defendant at the price fixed by the government 10,000 barrels of sugar, to be delivered as purchased during the months of November and December, upon condition that the contracts be canceled. Plaintiff declined to accept these offers of defendant.

There was evidence that the Food Administration allowed wholesalers to make a profit of one cent per pound, and retailers to make a profit of two cents per pound, on sugar during these months of November and December. There was also evidence that the plaintiff had 84 stores at which it sold sugar, and that it was abiding by the scale of profits approved by the Food Administration, and that plaintiff was able to procure only about half of the quantity of sugar it needed to supply its customers. Defendant's secretary and treasurer gave as one of the reasons for failure to deliver the sugar that he thought the producer, and not the middleman, whether wholesaler or retailer, should have the benefit of the advance in price, especially in view of the limitation by the Food Administration of profit to the middlemen of one and two cents per pound, and further testified that he was willing for plaintiff to have the entire output of the sugar manufactured by defendant, if by doing that plaintiff would surrender its contracts and claims thereunder.

The court charged the jury that, if defendant was prevented from manufacturing sugar by weather conditions, or the unripe condition of the cane, or the shortness of the sugar crop, it would be excused from making delivery; that it was the duty of the plaintiff to minimize the damages as much as possible by buying other sugar to take the place of that contracted for; and also that the government, through the Food Administration, had fixed the margin of profit for dealers as already stated, and instructed them to consider this fact in arriving at the measure of damages. It was shown by the evidence that a barrel of sugar contains 350 pounds or more, from which it is apparent that, if plaintiff had recovered the difference between the contract price and that fixed by the Food Administration, the damages would have been at least $27,552. Plaintiff recovered a verdict of $18,200.

[1] The exception of no right or cause of action was based upon the supposed failure of the petition to allege a putting in default. The allegations are that defendant "breached the said contract, and refused, notwithstanding repeated demands on the part of petitioner, to fulfill its part of said contract, by shipping said sugar," and that plaintiff "did timely and seasonably make demands during the month of November, 1919, and again during the month of December, 1919, upon the said de-

fendant, * * * for the fulfillment of its part of the said contracts, but all without avail." These allegations of the petition make it clear that no error was committed in overruling the exception.

[2] Defendant moved for a directed verdict in its favor. The grounds of the motion were in substance the same as the affirmative defenses pleaded, of causes beyond defendant's control and the action of the Food Administration. While it might have been true that weather conditions delayed the manufacture of sugar and rendered the yield less than it would have been, yet the fact remains that the defendant during the month of November manufactured enough sugar to fill its November contracts with plaintiff and all its other customers. Besides, it is quite apparent from the evidence that it was with great hesitation and reluctance that defendant requested plaintiff to cancel the contracts. It was for the jury to decide whether the greenness of the cane and weather conditions were the causes which influenced the action taken by defendant, in view of the advance in price of sugar and the fact that enough of it was manufactured to fill the contracts.

At the time the contracts were entered into the Food Administration had not undertaken to control the price of the sugar crop of 1919, and when this was done no attempt was made to cancel the contracts already made, if indeed, that was within the power of the Food Administration. It is not necessary to decide whether it was or not, or whether the recent decision by the Supreme Court in United States v. L. Cohen Grocery Co., delivered February 28, 1921, 255 U. S. ——, 41 Sup. Ct. 298, 65 L. Ed. ——, has any effect upon civil suits.

[3, 4] It is further contended that the contracts only contemplated the sale of sugar manufactured from cane grown by defendant. It may be, as stated by the District Judge, that defendant was not compelled under its contracts to buy cane and manufacture sugar out of it; but the evidence shows it did so, and that it was its uniform custom to do so. The terms of the contracts are broad enough to include all sugar manufactured by defendant, and it is difficult to see how they could be modified or varied by defendant's intention only to contract for future delivery of sugar manufactured from cane grown upon its plantations. The broker who negotiated the contracts denied that anything was said upon this subject, and if there had been it would not be admissible as evidence.

[5] It is assigned as error that the court admitted evidence as to the quantity of sugar manufactured at one of defendant's factories outside of St. Mary's parish during the month of November. It is insisted that defendant did not manufacture enough sugar at its factory within St. Mary's parish during November to fulfill its contracts for that month. This assignment is not based upon anything in the contracts themselves, but solely upon the contention that plaintiff in its petition only alleged that it was entitled to the sugar manufactured in St. Mary's Parish. We do not so construe the petition. It is true that it alleges defendant's place of business and domicile were in St. Mary's parish, but the contracts are pleaded in other paragraphs, and made a part of

the petition by reference. It is therefore wholly immaterial at which factory the sugar was manufactured.

[6, 7] It is also urged that the damages are excessive, upon the theory that, if defendant had delivered the sugar, plaintiff would only have been able to realize a profit of one cent or two cents per pound, depending upon whether it sold the sugar at wholesale or at retail. The amount of damages was properly left to the jury, and there is nothing in the instructions which could possibly have harmed the defendant. The Food Administration could not, under the provisions of the act of Congress (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r) which created it, arbitrarily fix the price at which future sales should be made. That remained a question finally to be determined by a jury, as it was in this case, under instructions that appear to be entirely correct.

Defendant produced enough sugar to fulfill its contracts. There were not sufficient weather or other conditions beyond defendant's control to prevent fulfillment, and there was no action of the Food Administration which operated to relieve defendant of its obligations.

The assignments of error are very numerous, but they only raise in various ways the questions which have been considered, and no error prejudicial to the defendant is made to appear by any of them.

The judgment is affirmed.